# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MARION LANGSTON and RAY LANGSTON | § § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-3712-S |
| ETHICON INC. and JOHNSON & JOHNSON | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss") [ECF No. 12]. The Court has considered the First Amended Complaint ("Amended Complaint") [ECF No. 9], Defendants' Motion to Dismiss, Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Defendants' Brief") [ECF No. 13], Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Response") [ECF No. 14], and Reply in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [ECF No. 22]. In addition, the Court has reviewed the supplemental authority submitted by the parties. *See* ECF Nos. 32 and 33. For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss.

### I.   BACKGROUND

This is a products liability case concerning injuries arising from a medical device implanted in Plaintiff Marion Langston ("Plaintiff"). Defendants Ethicon Inc. and Johnson & Johnson[1] ("Defendants") manufacture and sell pelvic mesh products, including the Gynecare Prosima pelvic mesh product ("Prosima"). Am. Compl. ¶¶ 2, 12. The Prosima is designed to treat stress urinary

---

[1] Ethicon Inc. is a wholly owned subsidiary of Johnson & Johnson. Am. Compl. ¶¶ 6-7.

incontinence and pelvic organ prolapse, and is intended to be permanently implanted in the pelvic floor of women suffering from those conditions. *Id.* ¶ 15, 17.

According to the Amended Complaint filed by Plaintiff and her husband Ray Langston (collectively, "Plaintiffs"), pelvic mesh products like the Prosima can cause serious harm to patients. Plaintiffs claim that because the products are implanted in an area of the body rich with blood vessels, nerves, and bacteria, the implanting procedure can lead to severe adverse reactions. *Id.* ¶ 56. Moreover, products like the Prosima contain polypropylene mesh, a material that promotes a severe foreign body reaction and chronic inflammatory response in a large subset of patients. *Id.* ¶¶ 17, 18. The body's adverse reaction to polypropylene can cause degradation, shrinkage, and contraction of the implanted mesh and of pelvic tissue, which in turn can cause patients to experience inflammation, chronic infections, significant urinary dysfunction, and vaginal deformation. *Id.* ¶¶ 17, 19-20. Defendants' pelvic mesh products also contain collagen, which disintegrates after implantation and causes surrounding body tissue to harden. *Id.* ¶ 19. Finally, the implanted mesh integrates with patients' pelvic tissue, which Plaintiffs claim makes it impossible to safely remove the Prosima in the event of an adverse reaction. *Id.* ¶ 56.

A doctor implanted Plaintiff with the Prosima on July 20, 2011, at Hunt Memorial Hospital in Greenville, Texas. *Id.* ¶ 2. According to the Amended Complaint, Plaintiff subsequently developed complications arising from the implant, including "complications necessitating removal procedures, pelvic pain, dyspareunia, dysuria, [and] urinary tract infections." *Id.* ¶ 3.

Plaintiffs seek actual and punitive damages for injuries resulting from the implantation and assert claims for strict products liability, negligence, breach of express and implied warranty, common law fraud, constructive fraud, negligent misrepresentation, violation of the Texas Deceptive Trade Practices Act, gross negligence, money had and received, loss of consortium, and

punitive damages. Defendants timely filed their Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

When a complaint alleges fraud, the plaintiff must plead the elements of her claims with heightened particularity under Rule 9(b). FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)

(quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Put simply, Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Id.*

### III.   ANALYSIS

Defendants move to dismiss the Amended Complaint in its entirety, arguing that (1) it is an impermissible "shotgun" pleading, and (2) it fails to state a claim upon which relief can be granted. Plaintiffs respond that the Amended Complaint is not a shotgun pleading because it provides Defendants adequate notice of the claims against them, and that it sufficiently pleads each substantive claim for relief under Rule 12(b)(6). Alternatively, Plaintiffs request leave to amend to address any deficiencies.

#### A.   *Shotgun Pleading*

The Fifth Circuit disfavors what it has referred to as the "'shotgun approach' to pleadings," where "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986), *abrogation on other grounds recognized by Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023-24 (5th Cir. 1994). A "shotgun" pleading is a "lengthy complaint that incorporates by reference all preceding paragraphs as it progresses through multiple counts." *Zucker v. Farish*, No. 3:18-cv-1790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018). A hallmark of shotgun pleadings is the "inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending

against them is significantly impaired." *Jim S. Adler, P.C. v. Angel L. Reyes & Assocs. PC*, 2020 WL 5099596, at *13-14 (N.D. Tex. Aug. 7, 2020), *report and recommendation adopted*, No. 3:19-cv-2027-K-BN, 2020 WL 5094678 (N.D. Tex. Aug. 29, 2020) (citing *Bates v. Laminack*, 938 F. Supp. 2d 649, 667 (S.D. Tex. 2013)).

Shotgun pleadings fall short of both Rule 8's requirement that a pleading contain a "short and plain statement" of grounds for relief and Rule 9's requirement of particularity. *Roe v. Johnson Cty., Texas*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at *4-5 (N.D. Tex. July 29, 2019), *report and recommendation adopted*, No. 3:18-cv-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019); *see also* FED. R. CIV. P. 8(a), 9(b). Accordingly, complaints of this type are subject to dismissal under Rule 12(b)(6) because asserting claims "by merely attaching a label and/or legal conclusion to no facts unique to that claim—or, at best, threadbare unique facts—is not sufficient to state a claim that is plausible on its face." *Lowe v. Dallas Police Dep't*, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017), *report and recommendation adopted*, No. 3:17-cv-704-G-BN, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017).

Here, Defendants assert that the Amended Complaint is a shotgun pleading because it incorporates the allegations of preceding counts and copies substantially from other complaints filed by other plaintiffs nationwide around the same time as this action was filed. Defs.' Br. 4-5. As a result, Defendants claim that it is impossible to ascertain potential defenses. *Id.*

It is true that Plaintiffs recite 23 pages and 74 paragraphs of factual allegations and then incorporate "every material fact of this Complaint" into each count. The majority of these facts relate to pelvic mesh products generally, Defendants' specific pelvic mesh product, and the FDA clearance process. Only four paragraphs in the Amended Complaint contain facts relating to

Plaintiffs individually, the implantation procedure at issue, or the specific injuries experienced by Plaintiffs. Am. Compl. ¶¶ 1-4.

This is not, however, a case in which "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *McMullan*, 801 F.2d at 788. Rather, the facts alleged are relevant to Plaintiffs' products liability and negligence claims based on Defendants' alleged conduct in the design, manufacturing, and marketing of the Prosima. The Amended Complaint states which product Plaintiff was implanted with; identifies the two Defendants, one of whom is owned and controlled by the other; and alleges that the implanted Prosima device, because of certain defects, caused Plaintiff severe complications related to the area of the body where the device was implanted. *See* Am. Compl. ¶¶ 2-3, 6-7, 56. And while the Amended Complaint may mirror other complaints filed for similar injuries, the context provided by the facts common to other pelvic mesh cases is relevant to Plaintiffs' case. Plaintiffs thus provide adequate notice to Defendants of the claims against them, and the Amended Complaint will not be dismissed as a shotgun pleading. The Court proceeds to Defendants' substantive arguments for dismissal of each claim.

### B. *Design Defect (Count II)*

To prevail on a design defect claim under Texas law, "a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 765-66 (5th Cir. 2018) (citing *Casey v. Toyota Motor Eng'g & Mfg. N.A.*, 770 F.3d 322, 330 (5th Cir. 2014)). Defendants argue that Plaintiffs' design defect claim must be dismissed because the Amended Complaint does not (1) identify a defect in the specific device implanted in Plaintiff,

(2) establish that any defect proximately caused Plaintiffs' injuries, or (3) identify a feasible safer alternative design. Mot. ¶ 2; Defs.' Br. 5-6. The Court disagrees.

Contrary to Defendants' assertions, the Amended Complaint specifically identifies several alleged defects with the design of the Prosima: the use of polypropylene and collagen in the device; a risky implantation procedure; the difficulty in achieving the product's removal; and the device's tendency to degrade, shrink, and fragment. *See* Am. Compl. ¶¶ 17-19, 56. It further identifies purportedly known complications that result from these alleged defects stating that Plaintiff experienced several of those complications after being implanted with the Prosima. *Id.*; *see also id.* ¶¶ 2, 55 (alleging that Plaintiff was implanted with the Prosima and experienced severe and permanent injuries as a result); ¶¶ 30-35 (citing to FDA warnings and other health advisory warnings regarding complications associated with pelvic mesh products). Viewed in the light most favorable to Plaintiffs, these alleged facts are sufficient to plausibly support Plaintiffs' position that the Prosima's design was unreasonably dangerous and proximately caused Plaintiff's injuries.

Plaintiffs must also allege the existence of a safer alternative design. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (citing TEX. CIV. PRAC. & REM. CODE § 82.005(a)). To satisfy this requirement, Plaintiffs must plead facts to support the plausibility that the Prosima "could have been alternatively designed in a safer manner" and that such alternative designs "were economically and technologically feasible." *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 804 (S.D. Tex. 2019) (citations omitted); *see also Casey*, 770 F.3d at 330. Here, the Amended Complaint alleges that "[f]easible and suitable alternative designs" and "suitable alternative procedures and instruments for implantation" existed, "including but not limited to a device that utilizes less polypropylene mesh and has larger pores, and/or a biologic device." Am. Compl. ¶

50. As this allegation must be accepted as true at the motion to dismiss stage, the Court finds that Plaintiffs have adequately pleaded a claim for design defect.

### C. *Manufacturing Defect (Count III)*

"A manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). To state a manufacturing defect claim, a plaintiff must plead the existence of a specific manufacturing defect, such as how the defect in the manufacturing process caused the personal injury or how the product deviated from its normal manufacturing specifications. *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011).

Defendants maintain that the Amended Complaint does not contain sufficient facts to establish that the specific Prosima device deviated from Defendants' design specifications. Mot. ¶ 3. Plaintiffs respond that the Amended Complaint satisfies the requirements of Rule 8 by pleading "that the Defendants manufactured the Prosima product, the manufacturing process rendered the Prosima defective and unreasonably dangerous because it deviated from its general specifications, and the defective conditions" caused Plaintiffs' injuries. Resp. 9 (*citing* Am. Compl. ¶¶ 26, 60-61, 67, 81-82, and 106-110).

But Plaintiffs have not alleged any facts regarding the Prosima's intended design or specifications, how its manufacture deviated from those specifications, or how such a deviation caused the alleged injuries. While the Amended Complaint alleges that "Defendants' Prosima device that was implanted in Plaintiff was defective and unreasonably dangerous at the time it left Defendants' possession, custody or control," Am. Compl. ¶ 60, such a formulaic recitation of the elements of a manufacturing defect claim does not suffice. *See Fearrington*, 410 F. Supp. 3d at 803 (finding manufacturing defect allegations impermissibly conclusory and vague where plaintiff

8

did not allege in detail pelvic mesh products' intended designs or specifications, how manufacturer deviated from the specifications, or how a deviation could cause the alleged injury); *see also Carpenter v. Boston Sci. Corp.*, No. 3:18-cv-02338-L, 2019 WL 3322091, at *7 (N.D. Tex. July 24, 2019) (dismissing complaint that did not "show the device deviated from the specifications or planned output, [or] how such deviations rendered Plaintiff's device unreasonably dangerous").

Instead of alleging details regarding how the device implanted in Plaintiff deviated from the Prosima's design specifications, the Amended Complaint only identifies purported problems with the overall product design. *See* Am. Compl. ¶ 108 (asserting that the Prosima implanted in Plaintiff "deviated from its intended design by utilizing a polypropylene mesh that degrades, contracts, shrinks, frays, cords, migrates, stiffens, hardens, is cytotoxic, causes chronic inflammation, loses pore size with tension, and/or otherwise deforms"). Though Plaintiffs sufficiently plead that the product, as designed, did not function as intended, such allegations are more akin to a design defect rather than a defect in the manufacturing of the specific Prosima device in question. Accordingly, Plaintiffs have failed to state a manufacturing defect claim upon which relief can be granted, and Defendants' Motion to Dismiss is granted as to this Count.

### D. *Failure to Warn (Count IV)*

Plaintiffs assert a strict liability claim against Defendants for their alleged failure to warn of the alleged risks associated with implantation of the Prosima. Texas applies the "learned intermediary doctrine" to failure to warn claims involving medical products. *DePuy*, 888 F.3d at 774; *Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 207 (5th Cir. 2008). Under this doctrine, a manufacturer is excused "from warning each patient who receives the product when the manufacturer properly warns the prescribing physician of the product's dangers." *Ackermann*, 526 F.3d at 207 (citing *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467-68 (5th Cir. 1999)). To recover for failure to warn under the learned intermediary doctrine, "a plaintiff must show that (1) the

9

warning was defective, and (2) the failure to warn was a producing cause of the injury." *Id.* at 208 (citing *Porterfield*, 183 F.3d at 468). To survive a motion to dismiss, a plaintiff must "plead facts that would show her doctors were inadequately warned and but for those inadequacies her doctors would have recommended different treatment or given Plaintiff counsel that would have led her to withhold consent." *Dubay v. Bos. Sci. Corp.*, No. 3:20-cv-01374-N, 2021 WL 3771769, at *1 (N.D. Tex. Jan. 21, 2021) (quoting *Fearrington*, 410 F. Supp. 3d at 801) (quotations omitted).

Defendants contend that the Amended Complaint does not contain sufficient facts identifying the materials received and reviewed by Plaintiff's doctor or demonstrating that her doctor would not have implanted the device had additional warnings been given. Mot. ¶ 4; Defs.' Br. 11-12. However, Plaintiffs allege that Defendants knew of and failed to warn Plaintiff's doctor of an extensive list of defects, including the Prosima's propensity to shrink and degrade; the risk of inflammation, chronic infections, scarring, recurrent pain, and revision surgery; or that complete removal of the Prosima might not be possible. Am. Compl. ¶¶ 112-13. Plaintiffs claim that the Prosima's label, instructions for use, and other related "pamphlets or commercial documents" did not disclose any of these defects. *Id.* ¶¶ 116-121, 123. In addition, Plaintiffs assert that the implanting physician relied on these deficient instructions for use and other marketing materials during the "consent process with Plaintiff prior to implanting the Prosima device." *Id.* ¶ 122. Finally, the Amended Complaint alleges that Plaintiff suffered from post-implantation complications of which Defendants failed to warn. *Id.* ¶ 131.

Accepting all well-pleaded facts as true and construing the Amended Complaint in the light most favorable to Plaintiffs, Court finds that Plaintiffs have sufficiently stated a plausible failure to warn claim.

### E. *Negligence (Count I)*

Plaintiffs assert a negligence claim based on Defendants' alleged breach of their duty of care as to the design, manufacture, marketing, labeling, packaging, and sale of the Prosima. Am. Compl. ¶¶ 81-85. Defendants contend that Plaintiffs' negligence claim should be dismissed to the extent the underlying theories of design defect, manufacturing defect, and failure to warn are dismissed. Defs.' Br. 15. Alternatively, Defendants argue that Plaintiffs do not allege facts to plausibly support a claim premised on an independent theory of negligence. *Id.*

To prevail on a negligence claim, a plaintiff must establish the existence of a "duty, a breach of that duty, and damages proximately caused by the breach." *W. Invest., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). Manufacturers "may be sued for negligence where they do not exercise ordinary care in the design and production of a product." *Fearrington*, 410 F. Supp. 3d at 802 (citing *Syrie v. Knoll International*, 748 F.2d 304, 307 (5th Cir. 1984)).

For the reasons explained in Sections B and D, Plaintiffs have stated claims based on Defendants' duty to use reasonable care in designing the Prosima and ensuring adequate warnings were provided to treating physicians. They also claim that as a result of Defendants' alleged breaches, Plaintiff was implanted with a defective device and sustained permanent injuries. Accordingly, the Court finds that Plaintiffs have sufficiently pleaded the elements of a negligence claim, and Defendants' Motion to Dismiss is denied as to this Count.[2]

---

[2] To the extent Plaintiffs' negligence claim is premised on a manufacturing defect theory, it necessarily fails for the reasons discussed above. *See Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988) (observing that under Texas law, "a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective.").

11

### F. *Gross Negligence and Punitive Damages (Counts XI and XIV)*

Plaintiffs seek punitive damages against Defendants for gross negligence. Defendants assert that Plaintiffs' gross negligence claim fails because (1) it is based on the same deficient allegations as their claims for negligence and strict liability, and that regardless, (2) Plaintiffs have not alleged facts showing that Defendants' conduct was so egregious as to rise to the level of gross negligence. Defs.' Br. 8. Defendants also maintain that because punitive damages are not a standalone cause of action, Plaintiffs' claim for punitive damages must be dismissed with the other deficient claims. *Id.* at 24.

Gross negligence has two requirements under Texas law: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002) (quoting *Henderson v. Norfolk Southern Corp.*, 55 F.3d 1066, 1070 (5th Cir. 1995)) (internal quotation marks omitted). To state a claim for gross negligence at the pleading stage, "a plaintiff must allege facts indicating that 'the defendant knew about the peril, but his acts or omissions demonstrate that he did not care.'" *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 768 (W.D. Tex. 2020) (quoting *Louisiana–Pac. Corp. v. Andrade*, 19 S.W.3d 245, 247 (Tex. 1999)).

Viewing the Amended Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately pleaded their gross negligence claim at this stage of the lawsuit and thus dismissal of their claim for punitive damages would be premature. *See* TEX. CIV. PRAC. & REM. CODE § 41.003 (permitting exemplary damages upon showing of fraud, malice, or gross negligence).

### G. *Breach of Express and Implied Warranties (Counts V and VI)*

Plaintiffs bring claims for Defendants' alleged breaches of both express and implied warranties. Defendants contend that Plaintiffs' breach of warranty claims should be dismissed as time-barred and that even if they are timely, Plaintiffs fail to state a claim because they do not identify any specific representation made to Plaintiff or her doctor by Defendants. Mot. ¶ 7. The Court agrees that Plaintiffs have not sufficiently pleaded facts to support their breach of warranty claims.

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." TEX. BUS. & COM. CODE § 2.313(a). Because the learned intermediary doctrine applies to warranty claims in the medical device context, Plaintiffs must plead facts showing that Defendants made express warranties to Plaintiff's implanting physician that they subsequently breached. *See Porterfield*, 183 F.3d at 468; *Fearrington*, 410 F. Supp. 3d at 806 (citations omitted). Contracts for the sale of goods include implied warranties that the product is merchantable, and, where the seller has reason to know of the buyer's particular purposes, that the product is fit for the buyer's intended use of the product. TEX. BUS. & COM. CODE §§ 2.314-2.315.

Regarding the breach of express warranty claim, the Amended Complaint claims generally that Defendants warranted to Plaintiffs and others that the Prosima was safe and effective, though it might cause "'transient' local wound irritation," as opposed to "chronic" irritation. Am. Compl. ¶¶ 134, 139. Plaintiffs claim that at some point some unknown representative of Defendants warranted to either Plaintiff or her doctor that the Prosima might cause "transient" irritation, citing the legal standard for creation of an express warranty that extends to future performance. The Court finds that these generic, nonspecific, and conclusory allegations fall short of the requisite

facial plausibility standard and therefore do not state a legally cognizable claim for breach of express warranty. *See Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).

Plaintiffs' implied warranty claim also falls far short of the requisite pleading standard. The Amended Complaint alleges that Defendants "impliedly warranted that the Prosima . . . was merchantable and was fit for the ordinary purposes for which it was intended," and that Defendants breached this warranty "because the Prosima product implanted in the Plaintiff was neither merchantable nor suited or fit for its intended use as warranted." Am. Compl. ¶¶ 149, 153. And, as a result, Plaintiff was allegedly implanted with "an unreasonably dangerous and defective product," causing significant injuries. *Id.* ¶¶ 155-56. These allegations amount to little more than a conclusory statement of the elements of the implied warranty of merchantability, and accordingly, are not well-pleaded facts which the Court must accept as true. *See Ferrer*, 484 F.3d at 780 (citation omitted).

Because Plaintiffs' claims for breach of express and implied warranty do not go beyond "a formulaic recitation of the elements" as required under *Twombly*, 550 U.S. at 555, Defendants' Motion to Dismiss is granted as to Counts V and VI.

### H. *Money Had and Received (Count XII)*

Money had and received is an equitable doctrine designed to prevent unjust enrichment. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (citing *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). This doctrine is inapplicable here.

A claim for money had and received is not premised on wrongdoing, but rather looks to whether a defendant has received money that rightfully belongs to another. *Id.* (citing *MGA Ins. Co. v. Charles R Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.)). To recover under this theory, a plaintiff must show that a defendant holds money that "in equity and

good conscience" belongs to the plaintiff. *Id.* (quoting *MGA Ins. Co.*, 358 S.W.3d at 813). If an express agreement governs the dispute, a plaintiff may not recover on a theory of money had and received. *See Villareal v. First Presidio Bank*, 744 F. App'x 204, 206 (5th Cir. 2018) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)).

Plaintiffs have not sufficiently pleaded any facts supporting a plausible inference that Defendants hold money that in equity and good conscience belongs to Plaintiffs. The Amended Complaint does not identify when money was paid, to whom, or how much. And the Court is not surprised that Plaintiffs do not cite any authority recognizing a claim for money had and received under Texas law in the context of a medical device products liability case. Because Plaintiffs have not stated a legally cognizable claim for money had and received, the Court grants Defendants' Motion to Dismiss as to this Count.

## I.   *Fraud Claims (Counts VII-X)*

The Amended Complaint asserts separate claims for common law fraud (Count VII), constructive fraud (Count VIII), negligent misrepresentation (Count IX), and violations of the Texas Deceptive Trade Practices Act ("DTPA") (Count X) (collectively, "fraud claims"). Defendants argue that the fraud claims fail to meet the particularity requirement of Rule 9(b) and must be dismissed. Mot. ¶ 7.

Rule 9(b)'s heightened pleading standard applies to Plaintiffs' claims for fraud, constructive fraud, DTPA violations, and negligent misrepresentation, all of which arise from the same operative facts and alleged misrepresentations. *See Benchmark Elecs.*, 343 F.3d at 723 (holding Rule 9(b) heightened pleading requirement applies to negligent misrepresentation claims based on the same set of facts as other fraud claims); *see also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."). To plead the elements

15

of fraud with particularity under Rule 9(b), a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[3] *Williams*, 112 F.3d at 177. The Court finds that Plaintiffs have not done so here.

First, the Amended Complaint does not identify who made the alleged misrepresentations or concealed the material information. Nor does it specify each Defendant's role with respect to the purported fraud or identify any specific statements that were allegedly fraudulent. Instead, the Amended Complaint only mentions vague representations and "false claims" relating to the safety of the Prosima and refers generally to "facts concealed and/or not disclosed" before relisting the product's alleged defects. *See* Am. Compl. ¶¶ 67, 163-64, 167-68, 176, 195-97. Missing from these allegations is any indication of the "who, what, when, where, and how" of the alleged fraud as required by Rule 9(b). *Benchmark Elecs.*, 343 F.3d at 724 (citations omitted).

Plaintiffs allege little more than that Defendants "concealed and suppressed material information, including limited clinical testing" that Plaintiffs claim would have revealed that the Prosima "had a higher risk of adverse effects." Am. Compl. ¶ 197. But the Amended Complaint does not identify when or where any of these vaguely alleged misrepresentations were made, and rather frames the allegations in generalized language. Because these allegations do not pass muster under Rule 9(b), Plaintiffs' fraud claims set forth in Counts VII, VIII, IX, and X are dismissed.

---

[3] Plaintiffs argue that the particularity requirement for these fraud claims "is relaxed since the requisite information was within Defendants' exclusive knowledge and control, and the fraud occurred over an extended period of time and consists of numerous acts." Am. Compl. ¶ 158 (citing *U.S. ex rel. King v. Alcon Laboratories, Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005)). The Court disagrees. And even if a relaxed standard did apply here, Plaintiffs still "must meet the minimum requirements of FRCP 9(b) to proceed." *King*, 232 F.R.D. at 570 (citing *Williams*, 112 F.3d at 178).

### J. Loss of Consortium (Count XIII)

Plaintiff Ray Langston asserts a sole claim for loss of consortium based on emotional distress, economic loss, and other damages related to his wife's alleged injuries. Am. Compl. ¶¶ 253-58. Claims for loss of consortium are derivative of "the tortfeasor's liability for [the other spouse's] physical injuries." *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738 (Tex. 1980). Because the Court finds that Plaintiffs have plausibly alleged claims for relief based on Plaintiff Marion Langston's underlying injuries, as discussed above, dismissal of Ray Langston's derivative loss of consortium claim is not proper at this stage. Accordingly, the Court denies Defendants' Motion to Dismiss as to Count XIII.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. Counts III, V, VI, VII, VIII, IX, X, and XII of the Amended Complaint are **DISMISSED**. The Court **GRANTS** Plaintiffs' request for leave to amend the dismissed claims.[4] Plaintiffs shall file an amended complaint, with or without the dismissed counts, by **January 17, 2022**.

**SO ORDERED.**

SIGNED December 31, 2021.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE

---

[4] Products liability cases such as the present case generally center on theories of strict liability (typically defective design and failure to warn) and negligence. Where other extraneous theories of liability are asserted, they are routinely abandoned or dismissed before trial. While the Court questions the viability of Plaintiffs' dismissed counts, Plaintiffs' request for leave to amend is nonetheless granted at this stage of litigation. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000).